### In the Matter of E. Frank WELKE.

### No. 1082 S 389.

Supreme Court of Indiana.

Feb. 22, 1984.

Mark W. Gray, Kightlinger, Young, Gray & De Trude, Indianapolis, for respondent.

Martha S. Hoover, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

This proceeding was commenced by the filing of a Three-Count Verified Complaint by the Disciplinary Commission of this Court. At the time of filing the complaint, the Disciplinary Commission moved for suspension of the Respondent pending this Court's final determination. Pursuant to the Rules of this Court, a Hearing Officer was appointed, hearings on the temporary suspension and complaint were conducted, and a report was filed. On April 13, 1983, the Respondent was suspended pending the final determination of this Court relative to the complaint. 446 N.E.2d 1333. A stay of the Order of Suspension was denied on June 14, 1983. Respondent now petitions for review of the Hearing Officer's findings, requests an argument and alternatively moves that any order of suspension have retroactive application to the initial date of suspension. Both parties have submitted briefs. Respondent's request for oral argument is now denied.

In his petition for review, Respondent challenges the findings and conclusions of the Hearing Officer. These matters will be considered within the process of our review of this case. Such process includes an examination of the record presented, argument raised in the pleadings, and the Hearing Officer's tendered findings and conclusions. This Court is not obligated to accept the Hearing Officer's findings, although such matters are given due deference. See, *In re Callahan*, (1982)

Ind., 442 N.E.2d 1092; *In re Murray*, (1977) 266 Ind. 221, 362 N.E.2d 128, appeal dismissed, 434 U.S. 1029, 98 S.Ct. 758, 54 L.Ed.2d 777; *In re Pawlowski*, (1959) 240 Ind. 412, 165 N.E.2d 595.

## COUNT I

Under Count I of the Verified Complaint filed in this cause, the Respondent is charged with failing to withdraw from professional employment after being discharged by his client, in violation of Disciplinary Rule 2–110(B)(4); recommending himself and requesting another to recommend his services, in violation of Disciplinary Rules 2–103(A) and (C); and charging a clearly excessive fee, in violation of Disciplinary Rules 2–106(A) and (B).

Upon review of all matters which have been submitted under this cause, this Court now finds that the Respondent is an attorney duly admitted to the practice of law in this State and, accordingly, is subject to this Court's disciplinary authority. Under Count I of the Verified Complaint filed in this cause, this Court now further finds that on January 26, 1980, Christine Spurgeon and her daughter were injured in an automobile accident; Mrs. Spurgeon made an appointment with an attorney to handle her accident claim. On February 16, 1980, Respondent's sister-in-law recommended Respondent to Spurgeon's sister; on February 17, 1980, Respondent's sister-in-law contacted Spurgeon and solicited a meeting between Spurgeon and Respondent; and on that same evening Respondent met with Spurgeon at her parents' home. Respondent was informed of a scheduled meeting between Spurgeon and another attorney the following day.

As a result of this conversation, Spurgeon employed Respondent to represent her interests under an oral contingency fee arrangement with a 25% attorney fee should the matter be settled prior to trial and a 33⅓% attorney fee should the case go to trial. On September 11, 1980, Respondent filed a claim on behalf of Spurgeon in Howard County.

On September 30, 1981, Respondent advised Spurgeon of a settlement offer in the amount of $8,250.00. Spurgeon rejected the settlement, sought advice of another attorney and discharged the Respondent. Thereafter, Spurgeon went to the Respondent's office, demanded, unsuccessfully, the return of the file and asked for a statement of the fee owed. Respondent quoted a fee of one-third of the settlement offer. Respondent also refused to return Spurgeon's file and withdraw from the case after being requested to do so by Spurgeon's new attorney.

On October 30, 1981, Spurgeon's new attorney directed a subpoena to Respondent to gain the return of the file; Respondent moved to quash this subpoena and on December 1, 1981, offered to compromise his claim on the condition that Spurgeon withdraw her disciplinary grievance and that Peru Trust, another client of Spurgeon's new attorney, not execute under a separate judgment against this fee. On January 14, 1982, a court hearing was conducted and Spurgeon was directed to sign a personal surety in Respondent's favor in an amount not to exceed $2,500.00 to cover any outstanding fee. Thereafter, Respondent rejected the form of the surety tendered and upon further hearing the trial court ordered that any surety not be considered as a lien. On February 5, 1982, the file was returned and on April 8, 1982, Respondent filed a lawsuit against Spurgeon and her attorney over the fee.

■ It is not improper for an attorney to volunteer legal advice if motivated by a desire to protect a person who is not aware of his legal rights or obligations. However, this does not appear to be the circumstance in the present case. Respondent's relative initiated the contact with Spurgeon and solicited a meeting with Respondent. Respondent may not have participated in the initial contact, but he readily acquiesced in his relative's acts. Furthermore, Respondent persisted in his communication with Spurgeon even though a meeting between Spurgeon and another attorney was scheduled for the very next

day. This conduct is clearly violative of Disciplinary Rules 2–103(A) and (C). Additionally, we further find under the facts set forth in this count that Respondent violated Disciplinary Rule 2–110(B)(4) by failing to withdraw from professional employment after being discharged by a client. There is insufficient evidence to find under a clear and convincing standard that the Respondent charged a clearly excessive fee.

## COUNT II

The Respondent is charged under Count II of the Verified Complaint with engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, conduct prejudicial to the administration of justice and conduct which adversely reflects on his fitness to practice law, in violation, respectively, of Disciplinary Rules 1–102(A)(4)(5) and (6) of the *Code of Professional Responsibility for Attorneys at Law;* with failing to withdraw from employment when it is obvious that continued employment will result in a violation of a Disciplinary Rule, in violation of Disciplinary Rule 2–110(B)(2); with accepting professional employment in a matter where the exercise of professional judgment on behalf of a client might reasonably be affected by Respondent's own financial, business, property, or personal interests, in violation of Disciplinary Rule 5–101(A); with entering into a business transaction with a client having differing interests when such client expects his attorney to exercise his professional judgment for the protection of such client, without full disclosure and consent, in violation of Disciplinary Rule 5–104(A); with failing to decline proffered employment and continuing employment in a situation where his independent professional judgment in behalf of a client is likely to be adversely affected by the acceptance of the proffered employment or the interests of another client and failing to make a disclosure of such conflict, in violation of Disciplinary Rules 5–105(A) and (B); and with making an aggregate settlement of claims against multiple clients without consent of such clients, in violation of Disciplinary Rule 5–106(A).

Upon review of the matters submitted in this cause, this Court now finds that in 1975 the Respondent represented Dr. Diego Reyes, as guardian for his son who was injured in a school accident; Dr. Reyes recovered damages on behalf of his son. Dr. Reyes, a Filipino, possessed an impressive financial statement but was decidedly lacking in business acumen. In November 1978, the Respondent and Reyes, along with Russell Rostron, formed a corporation named "Terre-Reale Development Corporation". Respondent prepared the corporate papers for the real property development business. All three parties signed promissory notes in order to capitalize Terre-Reale.

One promissory note executed by the Respondent, Reyes and Rostron was to the First National Bank of Logansport in the amount of $13,000.00. This amount represented a personal obligation owed by Respondent from a prior attempt to purchase property. Respondent's individual liability for this amount was substituted by the three parties on such note. The note was not paid, a lawsuit was commenced and a summary judgment was granted in favor of the bank against all three signors of the note. Respondent appeared for all three.

Another note was defaulted and thereafter the Peru Trust Company obtained a judgment against Respondent, Reyes and Rostron of approximately $14,000.00. Throughout the proceedings involved in this matter, Respondent purported to represent the corporation and all three guarantors, individually. This amount now represents a claim against the estate of Dr. Reyes.

A third promissory note to the Wabash Valley Bank executed by the Respondent, Reyes and Rostron, was defaulted. The bank sought judgment in the amount of $31,540.82 and again the Respondent purported to represent the corporation as well as the three signors of the note. A default judgment was entered as a result of the Respondent's failure to respond to the pleadings. As a set-off for this judgment,

on May 16, 1980, the bank deducted $31,-786.31 from the checking account of Dr. Reyes. Respondent paid nothing with regard to this obligation.

Throughout the applicable court proceedings relating to the three above noted promissory notes, Respondent purported to represent Terre-Reale Corporation and the individually named defendants, including himself. Subsequently, Respondent filed a claim of $15,000.00 against the estate of Dr. Reyes for legal services performed throughout the time period that Terre-Reale was in existence.

In his supplemental brief, Respondent argues that the interests of the guarantors were common. Terre-Reale Corporation was clearly a business venture and only after default and suit against the corporation and guarantors were the services of an attorney necessary. There was no difference in their relationships which gave one party more defenses than another in a lawsuit on their common notes.

With regard to legal defenses, Respondent's assessment of the obligations involved under these notes is correct; all parties are liable. But Respondent purported to act as more than co-guarantor; he also served as attorney for the corporation and the co-guarantors, including himself. For these professional services Respondent filed a claim against the estate of Dr. Reyes.

When Respondent assumed the role of attorney, he acquired the duties set forth under the *Code of Professional Responsibility for Attorneys at Law*. Canon 5 mandates all attorneys to exercise independent professional judgment on behalf of their clients. This cannot be accomplished if the individual interests of the lawyer conflict with those of a client, unless the extent of foreseeable, potential conflicts of interest are understood and accepted by the client.

Dr. Reyes was not a skilled businessman. He could not reasonably be expected to understand the rights of contribution among co-obligors. While there may be a common obligation, the obligee's ability to selectively enforce a promise or judgment creates a foreseeable, potential conflict within the ambit of Canon 5 of our *Code*. It was incumbent on the Respondent, when he accepted the role of attorney for the co-guarantors, to set forth to Dr. Reyes the nature of this potential conflict. This, Respondent failed to do. Accordingly, under Count II of the Verified Complaint filed in this cause, we now find that Respondent violated Disciplinary Rule 1–102(5) and (6), 5–101(A) and 5–105(A) and (B).

## COUNT III

Under Count III of the Verified Complaint, Respondent is charged with engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Disciplinary Rule 1–102(A)(4); with improperly entering into a business transaction with a client, in violation of Disciplinary Rule 5–104; and with accepting employment when professional judgment on behalf of a client may be affected by personal interests, in violation of Disciplinary Rule 5–101(A).

Examining the matters which have been filed under this cause, we find that Respondent, along with another person, attempted to develop a housing project in Greentown, Indiana, which was to be financed primarily through a loan from the Farmers Home Administration. Respondent, in his own name, submitted the appropriate pre-application form for this loan. There was no loan commitment made on this application. In April, 1978, a third party, James Hazen, offered to complete the housing project and in May, 1978, Respondent entered into an agreement to "transfer to James R. Hazen ... loan applications with Farmers Home Administration ..." Hazen paid Respondent $12,000.00 for the purported transfer. There was no transfer of the loan application in that Farmers Home Administration procedures required a new application from Hazen. Hazen submitted a pre-application form and eventually this loan went to closing, where the Respondent represented Hazen. The evidence further suggests, though, that such representation was

viewed as a mere technicality by all parties and not one of a fiduciary nature.

In light of the above considerations, we now find that the Respondent, in his dealings with Mr. Hazen, engaged in deceit and misrepresentation and accordingly violated Disciplinary Rule 1–102(A)(4) of the *Code of Professional Responsibility for Attorneys at Law.*

■ It is now the duty of this Court to determine an appropriate sanction by reason of the misconduct found in this case. As noted by this Court on prior occasions, this determination takes into account the specific acts of misconduct, this Court's responsibility to preserve the integrity of the Bar, and the risk, if any, to which we will subject the public by permitting the Respondent to continue in the profession or be reinstated at some future date. *In re Callahan,* (1982) Ind., 442 N.E.2d 1092; *In re Crumpacker,* (1978) 269 Ind. 630, 383 N.E.2d 36; *In re Vincent,* (1978) 268 Ind. 101, 374 N.E.2d 40.

■ In the present case, we observe an apparent inability to distinguish between professional representation and personal business endeavors. The *Code of Professional Responsibility for Attorneys at Law* does not preclude an attorney from being an entrepreneur or engaging in any other lawful profession. However, it does provide that if there is a conflict between these personal interests and professional obligations, the latter must prevail. Only through adherence to these principles and enforcement of such standards can the integrity of the profession be maintained.

■ In his dealings with Dr. Reyes, the Respondent placed himself in a position where professional judgment on behalf of a client reasonably may have been affected by the Respondent's personal interests. With regard to his business transactions with James Hazen, the Respondent misrepresented the marketability of an interest. These acts, along with the manner in which he handled the *Spurgeon* case convinces us that the Respondent does not have a sufficient appreciation of obligations and limitations imposed on all attorneys under the *Code of Professional Responsibility for Attorneys at Law.*

Accordingly, this Court now finds that a period of suspension is warranted, but that such suspension should be effective as of the date of the temporary suspension.

IT IS THEREFORE ORDERED that by reason of the misconduct found under this cause, the Respondent, E. Frank Welke, is suspended from the practice of law in the State of Indiana for a period of not less than two years, effective as of April 13, 1983.

Costs of this proceeding are assessed against the Respondent.