**In the Matter of Ronald V. AUNGST.**

**No. 481S118.**

Supreme Court of Indiana.

Sept. 4, 1984.

Ronald V. Aungst, pro se.

William G. Hussman, Jr., Greg M. Fudge, Staff Attys., Indianapolis, for the Indiana Supreme Court Disciplinary Comm'n.

PER CURIAM.

The Respondent, Ronald V. Aungst, has been charged by a Verified Complaint for Disciplinary Action with three counts of misconduct. A hearing officer appointed by this Court pursuant to A.D. Rule 23, has conducted a hearing and submitted his findings of fact and conclusions of law. The Respondent now seeks review of the same, challenging primarily the conclusions of misconduct.

We have examined all matters presented here for review and now find generally that Ronald V. Aungst was admitted to the Bar of this State in 1963 and thusly is subject to the professional disciplinary authority of this Court.

Under Count I of the complaint, the Respondent is charged with failing to preserve the trust res of a testamentary trust of which he had been appointed trustee; with failing to promptly pay a distributive share to a ward of the trust; and with attempting to make such distribution by drawing checks on accounts with insufficient funds, all in violation of Disciplinary Rules 1–102(A)(5)(6), 9–102(A) and 9–102(B)(4) of the *Code of Professional Responsibility for Attorneys at Law.*

Upon review, this Court now finds that on October 5, 1965, the Respondent was appointed the trustee of a guardian trust established in 1960 in the probated estate of Doyle C. York, deceased. The trust conferred upon the trustee the duty to distribute pro rata shares to decedent's children upon their attainment of majority. Upon appointment, the Respondent deposited the trust res, approximately $11,006.06, in an interest bearing account at First Federal Savings and Loan Association of Valparaiso, Indiana. On January 4, 1971, the Respondent withdrew $6,600 from this account without permission or order of either the Porter Superior Court, where the guardianship was filed, or of the wards of said trust. On the same date, he deposited the withdrawn funds into the Ronald V. Aungst Trust Account at the First National Bank of Valparaiso, Indiana. Immediately after said deposit, the balance in the Aungst trust account was $8,622.64. The Respondent thereafter withdrew money out of the Aungst trust account in January, 1971, causing the balance in said account to become $691.34 at the end of January, 1971. He used the money from the Aungst trust account in payment of his law office expenses. At the end of January, 1971, five children remained as wards of the guardianship and maintained expectations of payment of their distributive shares under the trust. None of the money withdrawn in January, 1971, from the trust res was withdrawn for the intended purpose of payment or distribution to, or for the benefit of, any of the York children as wards under the trust.

On January 14, 1980, the Respondent petitioned the Porter Superior Court for permission to distribute the remaining share of the trust res, $1,501.20, to Diana M. York, the youngest, surviving child and to subsequently close the guardianship trust. On January 14, 1980, the Porter Superior Court ordered the Respondent, as guardian, to so distribute the trust res and subsequently ordered the York guardianship closed.

Diana M. York contacted the Respondent on numerous occasions in an attempt to obtain her distributive share, and, on each occasion, the Respondent either failed to return her calls, failed to respond to or acknowledge correspondence, or represented that her distributive share would be forthcoming.

Approximately 11 months after the Porter Superior Court had ordered final distribution of the guardianship trust, the Respondent sent to Diana M. York, a check drawn on his trust account with the First National Bank of Valparaiso, Indiana. The check, upon being presented twice, was returned by the Bank due to insufficient funds in the account. On December 26, 1980, the Respondent met with Diana York in his law office and offered another check in the same amount and drawn on the same account. This check was also refused due to insufficient funds. The Respondent then offered Diana York partial payment of her distributive share to be made out of Respondent's father's account. She refused. On February 2, 1981, the Respondent forwarded to her a cashier's check for $1,600, $42.72 of which represented what he characterized as "recompense for your inconvenience."

In his petition for review the Respondent contends that at all times in question he was a trustee and, as such, was only bound by the trust laws and not by the Discipli-

nary Rules. This argument is unpersuasive.

■ The existence of legal duties, whether statutory or in common law, cannot relieve a lawyer from compliance with the *Code of Professional Responsibility*. The Disciplinary Rules exist independently of any other legal or moral obligations which a lawyer may have by virtue of his position. They state a minimum level of conduct below which no lawyer can fall without being subject to disciplinary action. In the past, this Court has found that an attorney, acting as trustee, violated the *Code of Professional Responsibility* by similarly using the trust funds, without authority or permission, for his own purposes. See gen. *In re Merritt*, (1977) 266 Ind. 353, 363 N.E.2d 961.

■ The findings under this count portray an attorney who, as a trustee, for a period of time diverted trust funds under his control for his own use; an attorney who, as a trustee, failed to promptly pay a distributive share to a ward of the trust; and who, in an attempt to do so, repeatedly issued checks which were returned for insufficient funds. The Respondent was appointed by the trial court to fulfill a position of trust and to faithfully carry out the court's and trust settlor's directives. By his disregard of his fiduciary duties and duties as an appointee of the court, he engaged in conduct prejudicial to the administration of justice and conduct which adversely reflects on his fitness to practice law, in violation of Disciplinary Rules 1–102(A)(5) and (6) of the *Code of Professional Responsibility*. In that the Respondent was not serving in an attorney-client relationship, the evidence is insufficient for finding of a violation of Disciplinary Rules 9–102(A) and (B)(4).

■ The Hearing Officer has also found that the Respondent engaged in conduct involving dishonesty, fraud, deceit or misrepresentation in violation of Disciplinary Rule 1–102(A)(4). The Respondent contends that his conduct did not involve dishonesty. We will not examine this issue in that the Respondent has not been so charged in the verified complaint. The Respondent in a disciplinary proceeding is entitled to know in advance the extent of charges against him, and procedural due process would not allow a finding of misconduct when he has not been charged. See gen. *In re Roberts*, (1983) Ind., 442 N.E.2d 986. We, therefore, find no violation of Disciplinary Rule 1–102(A)(4).

Under Count II, the Respondent is charged with engaging in illegal conduct involving moral turpitude, conduct that is prejudicial to the administration of justice and conduct that adversely reflects on his fitness to practice law, in violation of Disciplinary Rules 1–102(A)(3)(5) and (6) of the *Code of Professional Responsibility*.

The parties have stipulated that on October 30, 1980, the Respondent executed a check drawn on his general account with the First National Bank of Valparaiso, Indiana, for $2,620.80, payable to Grieger's Motor Sales, Inc. The check was returned to Grieger's Motor Sales due to non-sufficient funds in the Respondent's checking account. Jack Wieland, the Vice President of Grieger's Motor Sales, Inc., caused to be sent to the Respondent a correspondence whereby the Respondent was "officially notified" that the check had been returned for non-sufficient funds. As a direct result of the returned check and Respondent's failure to satisfy it, Jack Wieland, on January 15, 1984, caused an "Information" and "Affidavit to Show Probable Cause for Issuance of Arrest Warrant" to be executed and issued by the Prosecuting Attorney in the Porter County Court charging the Respondent with Deception, a class "A" misdemeanor. On July 8, 1981, the Porter County Court granted the prosecution's motion to dismiss the charge because the Respondent had made restitution on the check.

The Respondent contends that significant findings of fact have been omitted. In that he offers absolutely nothing further to substantiate his claim, we find it to be without merit. He also states that he does not concur with a finding of misconduct, but

offers nothing further in way of argument or supporting authority. We conclude that by failing to make restitution on a "bad check" for approximately six months, thereby causing criminal action to be filed against him, the Respondent engaged in conduct prejudicial to the administration of justice and conduct that adversely reflects on his fitness to practice law, in violation of Disciplinary Rules 1–102(A)(5) and (6). The Hearing Officer has also found that the Respondent has violated Disciplinary Rule 1–102(A)(4). However, because the verified complaint does not so charge the Respondent, we find, as under Count I, no violation. As to Disciplinary Rule 1–102(A)(3), we find that the Hearing Officer's conclusions do not include a finding of misconduct under this charge. In light of this and the circumstances in this instance, we concur with this determination.

In Count III, the Respondent is charged with engaging in conduct involving conflict of interest in violation of Disciplinary Rules 1–102(A)(5) and 5–105(A) and (B).

In accordance with a stipulation of the parties and the Hearing Officer's findings of fact, we find that Johnny Hodge and Jackie Hicks were co-defendants on a murder charge in the Porter Superior Court. On July 5, 1978, both Hodge and Hicks were convicted of murder. The Respondent had represented Hicks at the trial level in the Porter Superior Court and continued representing him on appeal in the Indiana Supreme Court. While said appeal was pending, Hicks and Hodges were charged with two additional murders in the Lake County Superior Court, Criminal Division. While representing Hicks on appeal in this Court, the Respondent entered his appearance for Hodge in the murder cases in Lake County. In these cases in Lake County, Hicks had entered into a plea agreement which required him to testify against Hodge at the trial. In exchange for Hick's testimony, the charges of murder against Hicks would be dismissed. Hodge was aware of the possible conflicts and gave his consent; however, the Respondent did not discuss possible conflicts of interest with Hicks before entering an appearance for Hodge or during his representation of Hodge in the Lake County cases.

■ The Hearing Officer has found that any affects on the exercise of Respondent's independent professional judgment in this instance could be adverse only to John Hodge who consented to the representation with full knowledge. The Hearing Officer, thus, found no violation of Disciplinary Rules 5–105(A) or (B). We concur with said finding and conclusion.

■ Upon finding misconduct under Counts I and II, we must now determine the appropriate discipline. In doing so this Court takes into consideration the specific acts of misconduct, this Court's responsibility to preserve the integrity of the Bar, and the risk, if any, to which we will subject the public by permitting the Respondent to continue in the profession. *In re Welke*, (1984) Ind., 459 N.E.2d 725; *In re Callahan*, (1982) Ind., 442 N.E.2d 1092. In the instant case, the Respondent, as a trustee appointed by the trial court, used the trust res for payment of his law office expenses and subsequently failed to promptly distribute said trust res in accordance with the instrument and court order. Such breach of fiduciary and professional duties and Respondent's further acts of misconduct are a discredit to the profession and cast serious question as to Respondent's integrity and fitness to continue in the practice of law. This Court would be remiss in its duty to protect the public from unfit lawyers and to safeguard the integrity of the profession if we were to tolerate a lawyer's tampering with entrusted funds. We, thus, find that the serious nature of the misconduct found herein render him unfit to continue as a member of the Bar of this State. It is, therefore, ordered that the Respondent be, and he hereby is, disbarred from the practice of law in this State.

Costs of this proceeding are assessed against the Respondent.

PIVARNIK, J., not participating.