**In the Matter of Steven D. ALLEN.**

**No. 1083S358.**

Supreme Court of Indiana.

Nov. 19, 1984.

Robert W. Hammerle, Indianapolis, for respondent.

Sheldon A. Breskow, Executive Secretary, Gregory M. Fudge, Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Commission.

## DISCIPLINARY ACTION

PER CURIAM.

The Disciplinary Commission of the Indiana Supreme Court has charged the Respondent, Steven D. Allen, with three counts of misconduct arising out of the same incident. The Hearing Officer, appointed pursuant to Admission and Discipline Rule 23, has submitted his findings and conclusions, and the Respondent has now petitioned for review. The Respondent has also filed a petition for oral argument, which petition is hereby denied.

In accordance with the well established review process employed in disciplinary cases, this Court has examined all matters presented herein. We find generally that Steven D. Allen was admitted to the Bar of the State of Indiana on October 9, 1974. He was retained by Michael Altman to defend Altman in the Marion County Superior Court, Criminal Division, Room 3, on criminal charges involving illegal drugs. Thereafter, the Respondent had a chance meeting with another attorney in a bar on the northside of Indianapolis. Altman's case came up, and, in the course of the conversation, this attorney told the Respondent that he had a relationship with the judge presiding in Altman's case, the Honorable

Charles C. Daugherty. This attorney further told the Respondent that he had played golf with the judge, had eaten dinner with the judge, and had discussed the outcome of cases with the judge, in chambers. Such attorney implied that if he was employed as co-counsel in the Altman case, he could affect the outcome in defendant's favor.

The Respondent spoke with Altman and represented to him that he, Allen, did not have a good rapport with the judge but that another attorney did; that such attorney had been appointed Public Defender in Judge Daugherty's court; that such attorney said he could talk to the judge and the judge would listen to him; that such attorney would be able to have some influence with the judge; and that such attorney had stated that a favorable decision could be reached in the case. The Respondent also related to Altman this attorney's personal relationship with the judge, i.e., having dinner and playing golf with the judge. Based upon this attorney's representations, the Respondent recommended that Altman employ such attorney as co-counsel. Based upon Respondent's recommendation, Altman did employ this attorney as co-counsel. His fee was $5,000.00.

After a bench trial in the matter, Altman was found guilty on two counts of conspiracy to deal in cocaine and acquitted for possession of cocaine. He was sentenced to twenty years in prison.

Altman's subsequent attorney, Marcus Emery, filed the Motion to Correct Error on behalf of Altman. Therein, it was alleged, *inter alia*, that Altman was denied effective assistance of counsel because the defendant was mislead by representations made by co-counsel, thereby precluding plea negotiations which could have been in defendant's best interests. As an exhibit thereto, the Respondent executed an affidavit which stated that he had recommended that his client, Altman, consider employing co-counsel due to co-counsel's representations. Among other things, the Respondent's affidavit stated:

.    .    .    .    .

"3. ... (co-counsel) ... stated that he had a relationship with the Honorable Charles C. Daugherty, Judge, that he had dinner with the Judge, played golf with the Judge, that he discussed the outcome of his cases with the Judge in chambers, that if employed as co-counsel he could affect the outcome of the case in the defendant's favor.

4. That thereafter I again contacted ... (co-counsel) ... about his possible employment and he advised me that he had discussed this case with the Judge and been assured that the Judge would not "hurt him".

5. That based upon said representation I recommended my client, Michael Altman, consider employing ... (this attorney) ... as co-counsel.

6. That due to ... (co-counsel's) ... representations, the defense strategy of this cause was changed upon the theory that the Court would acquit on the A Felonies and convict on the D Felony.

7. That during the time this cause was pending, I had plea negotiations with Deputy Prosecutors assigned to the case for various plea options between six (6) years and fifteen (15) years executed.

8. That because of the representations of ... (co-counsel) ..., I did not pursue a plea agreement for six (6) years executed which, based upon prior experience I feel could have been reached as a deposition in this case."

.    .    .    .    .

The foregoing findings are the subject of Counts I and II of the Complaint wherein the Respondent is charged with stating or implying that he is able to influence improperly or upon irrelevant grounds a tribunal; with counseling or assisting his client in conduct the lawyer knows to be illegal or fraudulent; with prejudicing or damaging his client and with conduct that adversely reflects on Respondent's fitness to practice law, all in violation of Disciplinary Rules 9–101(C), 7–102(A)(7), 7–101(A)(3) and 1–102(A)(6) of the *Code of*

*Professional Responsibility for Attorneys at Law.*

██ In his petition for review, the Respondent contends that the evidence is insufficient to support a conclusion that he stated or implied that co-counsel could influence the judge improperly or upon irrelevant grounds. We disagree.

The subject rule, Disciplinary Rule 9–101(C) states that:

"(C) A lawyer shall not state or imply that he is able to influence improperly or upon irrelevant grounds any tribunal, legislative body, or public official."

There is no doubt that all participants believed that this attorney could influence the outcome of the case, and that this was the reason for his being hired as co-counsel. From the foregoing findings, we are convinced that the recommendation to hire this attorney was made by the Respondent not because of superior skills or knowledge in criminal defense work, but because of an alleged personal relationship with the judge. The implication is not that of simply good professional rapport or mutual respect between lawyer and judge; it is an implication of a special standing in which the proposed co-counsel routinely speaks to the judge about cases, outside the courtroom, and by which method the proposed co-counsel could achieve special treatment for the defendant, an outcome which could not be achieved through regular channels. Reading Respondent's statements in the least damaging light, it is still abundantly clear that playing golf and eating dinner with the judge are certainly not "relevant grounds" on which an attorney should be recommended, nor are they grounds on which an attorney can seek to persuade a tribunal. The representations made by the Respondent to Altman lead to but one conclusion, the implication that co-counsel should be hired because he stands in a special position of favoritism with the presiding judge. The suggestion was clear that, with this attorney as co-counsel, the judge could be persuaded on, at best, irrelevant grounds. We, therefore, conclude that there is abundant evidence to support

a finding of misconduct under Disciplinary Rule 9–101(C).

We find also that the Respondent did counsel his client to hire this attorney for other than legitimate reasons. However, in that no evidence has been introduced of a statutory or other prohibition which renders such conduct illegal or fraudulent, the evidence is insufficient to prove a violation of Disciplinary Rule 7–102(A)(7).

The Respondent is also charged with prejudicing and damaging his client and thereby violating Disciplinary Rule 7–101(A)(3) of the *Code*. The evidence which would suggest that Altman may have received a lighter sentence is found in the Respondent's own affidavit attached to Altman's "Motion to Correct Errors". We, therefore, conclude that, by his own admission, the Respondent prejudiced and damaged the interests of his client even though he may have effectively and competently represented this client. The foregoing conduct adversely reflects on Respondent's fitness to practice law and is violative of Disciplinary Rule 1–102(A)(6) of the *Code of Professional Responsibility for Attorneys at Law.*

Under Count III, we find that the Respondent sent a letter dated January 6, 1983, to the Disciplinary Commission. The pertinent portion of said letter states:

.    .    .    .    .

"Pursuant to your letter of November 18, 1982, I would like to take this opportunity to respond to your request for investigation.

I associated ... (this attorney) ... with myself as co-counsel for Michael Altman because of ... (this attorney's) ... representation that he enjoyed a high level of success and creditability in Judge Daugherty's court. (This attorney) ... indicated that his participation in the case would affect the outcome of the case in that it was possible to convince the Judge that Altman was not guilty of any of the conspiracy charges but only the possession charge. At no time did I believe ... (this attorney) ... was going

to attempt to improperly influence the outcome of the case.

I executed an affidavit prepared by Marcus Emery, attorney representing Altman in the appeal of his conviction on the conspiracy charges. Said affidavit was an attempt to summarize a forty-five (45) minute conversation between myself and Mr. Emery. The purpose of the affidavit is to support Mr. Altman's claim that he was denied effective assistance of counsel."

. . . . .

Under this count the Commission charges that the Respondent's affidavit given with Altman's Motion to Correct Error and the representations in the foregoing letter-response conflict and cannot be reconciled. He is, thus, charged with engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, with knowingly using perjured testimony or false evidence, and with knowingly making a false statement of law or fact, all in violation of Disciplinary Rules 1–102(A)(4) and (6) and 7–102(A)(4) and (5) of the *Code of Professional Responsibility for Attorneys at Law.* The Respondent challenges the charge and the finding of misconduct but not the facts.

■ An attorney who is the subject of a grievance and investigation has a duty to cooperate in said process. During the proceeding there may be instances where a Respondent's conduct could be such as to constitute independent grounds for disciplinary charges. This duty to cooperate does not, needless to say, require an admission of violation, nor does it preclude the advocacy of a theory of defense which is contradictory to the allegations of misconduct.

■ In this instance, the Respondent made two statements concerning his recommendation for hiring co-counsel. One was made under oath in behalf of his ex-client; the other was sent by the Respondent in his own behalf. Both statements clearly state that co-counsel was hired to influence the outcome of the case. The allegation of falsehood hinges on the irreconcilable explanation given as to the reasons for recommending the hiring of co-counsel. In his letter-response, the Respondent attempts to explain that the favorable influence sought and promised to Altman was based on co-counsel's ability to convince the judge in Altman's favor, but that the Respondent at no time believed that such influence would be improper. The affidavit is one piece of evidence which we have herein found to imply that the Respondent believed co-counsel would influence the case on irrelevant or improper grounds. In disciplinary matters the ultimate fact finder is this Court, and it is the purpose of this proceeding to determine whether or not clear and convincing evidence exists to prove misconduct as charged. *In re Moore* (1983) Ind., 453 N.E.2d 971. With this in mind, the Respondent cannot be precluded from insisting on a more favorable interpretation of the damaging affidavit. It is his thoery of defense, which he has propounded not only in his response to the Commission but also in his petition for review and supporting brief filed with this Court. In light of the foregoing considerations, we find no misconduct under Count III of the complaint.

■ We must next determine the appropriate sanction by an evaluation of the specific act of misconduct found earlier, its impact on the public, and this Court's responsibility to preserve the integrity of the Bar. *In re Aungst,* (1984) Ind., 467 N.E.2d 698; *In re Welke,* (1984) Ind., 459 N.E.2d 725; *In re Callahan,* (1982) Ind., 442 N.E.2d 1092. A client, as in this case, finding himself in the precarious position of being face to face with a serious felony conviction and a lengthy incarceration, becomes the perfect subject for the sort of subtle persuasion present in the Respondent's representations. Swayed by the enticement of an "in" with the judge, the client agreed to hire a co-counsel who was paid $5,000.00 as a fee. When the anticipated outcome did not transpire, the Respondent blamed the co-counsel and the co-counsel's representations as to influence with the court. The unwitting client, already in

a difficult situation, is ready to believe in and is happy to pay for what he perceives to be the easy way out of his predicament. This sort of practice cannot be allowed to persist. It is damaging to the client and prejudices his legitimate interests. The aspersions cast on the judiciary of this state, upon our system of justice, upon the entire legal profession, serve to destroy the public's confidence in our institutions. We are, thus, convinced that, in light of the particular nature of the violation and its affect on the public and the integrity of the profession, a period of suspension is warranted.

IT IS, THEREFORE, ORDERED that the Respondent be and he hereby is suspended from the practice of law for a period of one (1) year, beginning December 17, 1984.

Costs of this proceeding are assessed against the Respondent.

DeBRULER, J., dissents and would find no misconduct.