**In the Matter of Richard P. WATSON.**

**No. 1283S468.**

Supreme Court of Indiana.

Sept. 6, 1985.

Leonard Opperman, Indianapolis, for respondent.

Gregory M. Fudge, Staff Atty., Indianapolis, for the Indiana Supreme Court Disciplinary Com'n.

PER CURIAM.

This matter is before us on a one-count Amended Verified Complaint for Disciplinary Action. The hearing officer in this matter has filed his findings of fact and conclusions of law. The Respondent has petitioned for review of the same and, alternatively, for a dismissal. Additionally, the Respondent has petitioned for an oral argument.

After due consideration, we find that the Respondent's Petition for Oral Argument and Motion to Dismiss should be and are hereby denied.

In his Petition for Review, the Respondent challenges the Hearing Officer's conclusions of misconduct, the findings themselves as being incomplete and makes a further claim of a procedural error at the investigation and charging stage of the complaint.

■ At this juncture we will address Respondent's claim of a procedural error. The Respondent contends that he was not sufficiently appraised of the charges the Commission intended to file and was thereby denied procedural due process. We find this argument unpersuasive. A disciplinary grievance is not strictly construed. Such a grievance must merely advise the Respondent of the general nature of the allegation of misconduct made against him. *In re Crumpacker* (1978), 269 Ind. 630, 383 N.E.2d 36; *In re Wireman* (1977), 270 Ind. 344, 367 N.E.2d 1368, Cert. Denied 436 U.S. 904, 98 S.Ct. 2234, 56 L.Ed.2d 402; *In re Murray* (1977), 266 Ind. 221, 362 N.E.2d 128, appeal dismissed, 434 U.S. 1029, 98 S.Ct. 758, 54 L.Ed.2d 777 (1978). There is nothing before us which would indicate that the Respondent was not advised of the general nature of the allegations against him. The vast majority of grievances are filed by lay persons not familiar with the Code of Professional Responsibility or the specific rules thereunder. The function of the Disciplinary Commission is to review the grievances, dismiss those which are baseless, and then frame a complaint so as to place the alleged misconduct within the structure of the *Code*. *Murray, supra.* Accordingly, we conclude that Respondent's contention is unpersuasive.

■ Respondent further contends that the Hearing Officer's findings are incomplete. The Respondent would have us make specific findings that his acts did not constitute misconduct under certain disciplinary rules, though the Verified Complaint did not charge a violation of said rules. Lack of such findings and conclusions does not render the Hearing Officer's report insufficient.

Respondent's remaining contentions will be considered within the review process of this case and will be resolved by this Court's ultimate conclusion. There is little disagreement with the findings of fact submitted by the Hearing Officer. Upon review of the findings and all other matters submitted herein, we find generally that the Respondent, Richard P. Watson, represented Lucille F. Willey in litigation involving her deceased husband's estate. Between 1978 and 1980, the Respondent provided legal services for Mrs. Willey for which he was paid on an hourly basis. From September, 1978 through July, 1980, the Respondent billed and was paid some $30,000. In September of 1980, the Respondent and Mrs. Willey entered into a different fee agreement. Mrs. Willey paid a one time flat fee of $10,000, in advance, for which the Respondent was to "wind up" all pending litigation. In May of 1981, the Respondent advised Mrs. Willey that a hearing on the "Trustee's Report" would be needed, and that such a hearing had not been contemplated in the $10,000 fee arrangement. The Respondent proposed a financial arrangement wherein Mrs. Willey would loan the Respondent $15,000 interest free for which the Respondent would provide her with legal representation until the termination of the additional matters. Mrs. Willey did not have $15,000, but she did loan the Respondent $7,500 under the same arrangement. On June 11, 1981, the Respondent prepared and caused to be sent to Mrs. Willey a Promissory Note wherein he agreed to pay her back the $7,500 with 0% rate of interest "on or before the day the final Willey Estate litigation is concluded". At no time did the Respondent appraise his client of the adverse interests involved in such an unsecured loan payable on an uncertain date nor did he ever advise her to seek independent legal advice concerning the loan.

On August 8, 1982, the Respondent filed a Petition for Bankruptcy under Chapter 13 in the United States Bankruptcy Court for the Southern District of Indiana, Indianapolis Division. On June 1, 1983, the Respondent filed an Amended Debtor's Petition converting the aforesaid petition to a pro-

ceeding under Chapter 7. The Respondent included the $7,500 indebtedness to Mrs. Willey in the "Schedule A–3 Creditors Having Unsecured Claims Without Priority".

On May 13, 1983, Mrs. Willey sent the Respondent a letter wherein ,she stated that the Hal S. Willey Trust was terminated effective May 6, 1983, and she demanded payment of the $7,500. On June 13, Mrs. Willey received a letter from the Respondent wherein he informed her that he had filed bankruptcy and had included the debt owed to her in the schedule of creditors filed with the bankruptcy petition.

The Verified Complaint charges that the Respondent violated Disciplinary Rule 5–101(A) by accepting employment without full disclosure to and consent of his client, when the lawyers' business, property or personal interests may impair the lawyer's independent professional judgment; with violating Disciplinary Rule 5–104(A) by entering into a business transaction with a client, without full disclosure and consent of the client, wherein the lawyer and client have differing interests; with violating Disciplinary Rule 7–101(A)(3) by prejudicing and damaging his client during the course of the professional relationship; and with violating Disciplinary Rules 1–102(A)(4) and (6).

The Respondent argues that the loan arrangement was not a business transaction but a somewhat unusual fee arrangement worked out to meet the client's needs. The ultimate issue, he contends, is a fee dispute. We find Respondent's argument misdirected. The Respondent agreed to represent Mrs. Willey in future matters involving the trust litigation and to receive as his fee the free use of $7,500 for an unspecified period of time. There is no charge nor has the Hearing Officer found that such a fee arrangement was *per se* improper. At issue here is a loan of a principal amount of $7,500 which the Respondent borrowed from his client. The evidence is clear that the Respondent entered into a business transaction with his client; that the transaction, an unsecured loan with a payment date contingent upon

the conclusion of litigation being handled by the Respondent, did involve conflicting interests; that the Respondent failed to disclose the ramifications of the provisions of the loan and the potential conflict nor did he advise his client to seek independent legal counsel; and that the client was entitled to expect and rely on Respondent's independent professional judgment and undivided loyalty. In light of these considerations and the findings, we conclude that the Respondent did violate Disciplinary Rule 5–104(A).

The Respondent further argues that he did not violate Disciplinary Rule 5–101(A) in that he was not accepting employment but merely continuing several years of legal representation involving the same matter. The argument is unpersuasive. With the inception of the loan arrangement, the Respondent accepted additional employment from Mrs. Willey. He agreed to represent her at a hearing which was not contemplated nor paid for under the previous employment and fee agreement. Furthermore, by making the repayment of the principal amount contingent on the completion of the litigation, the Respondent's personal and financial interests could reasonably be expected to effect the exercise of his professional judgment on behalf of his client. We, thus, conclude that, by the conduct set out above, the Respondent did violate Disciplinary Rule 5–101(A) of the *Code of Professional Responsibility for Attorneys at Law.*

The Respondent also challenges the Hearing Officer's conclusion that the Respondent violated Disciplinary Rules 7–101(A)(3) and 1–102(A)(4) and (6) by borrowing money from his client, failing to repay it and by filing bankruptcy. The Respondent argues that because the debt he owed his client was discharged in a bankruptcy proceeding, this Court is precluded from disciplining him under the provisions of 11 U.S.C. § 525 and the Supremacy Clause of the U.S. Constitution. Respondent's argument, however, proceeds from the premise that he is being disciplined for filing bankruptcy. The Respondent is charged with

damaging his client during the course of their professional relationship by borrowing money from her, without disclosure or consent, and thereafter failing to repay the loan. Financial difficulty which led to subsequent discharge in bankruptcy was the apparent reason for the failure to repay the loan. That fact, however, has no direct bearing on the essence of the charge or the violation which, in this case, is not the filing of bankruptcy, but the transgressing of the attorney-client relationship. We need not address the hypothetical question of whether the Bankruptcy Code and the U.S. Constitution preclude this Court from disciplining an attorney for discharging debts through bankruptcy proceedings for it is not at issue in this case. .

In view of these considerations and the above noted findings, this Court concludes that the Respondent's conduct is violative of Disciplinary Rules 7–101(A)(3) and 1–102(A)(6) of the *Code of Professional Responsibility for Attorneys at Law.*

Having found that the Respondent engaged in misconduct we must now assess the appropriate sanction. The Respondent in this case, familiar with the financial status of his client, approached her for a loan. The agreement drafted by the Respondent left the client's interest unsecured and the repayment of the principal amount contingent on litigation being handled by the Respondent. By this conduct, the Respondent abused his position; he not only failed to protect his client's interests but subverted the same to his personal benefit. It is this Court's conclusion that, by reason of the misconduct found herein, a period of suspension from the practice of law is warranted. It is, therefore, Ordered that the Respondent, Richard P. Watson, be and he hereby is suspended from the practice of law for a period of one (1) year beginning October 1, 1985.

Costs of this proceeding are assessed against the Respondent.

HUNTER, J., not participating.