**In the Matter of Richard R. WIRT.**

**No. 184S30.**

Supreme Court of Indiana.

Sept. 18, 1985.

R. Larry Helmer, Indianapolis, for respondent.

William G. Hussman, Jr., Staff Atty., Indianapolis, for Ind. Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

This case is before us on a three-count Verified Complaint filed by the Indiana Supreme Court Disciplinary Commission. The Hearing Officer appointed pursuant to Admission and Discipline Rule 23, has filed his Findings of Fact and Conclusions. Neither the Respondent nor the Disciplinary Commission have challenged the Report of the Hearing Officer.

Having considered all matters submitted in this case, this Court finds that the Hearing Officer's findings of fact should be adopted. Accordingly, we find under Count I that in May, 1981, William G. Allen requested the Respondent to settle the estate of Allen's father, Charles Allen, who had died on May 7, 1981. By June 23, 1981, Allen paid the Respondent a legal fee of $200.00.

The primary asset of the estate was a piece of real property which Charles Allen had inherited pursuant to a Final Decree dated October 4, 1976, in the Matter of the Estate of Anna Bell Allen, in the Madison Circuit Court.

The Respondent did not open an estate for Charles Allen and took no action to clear the title to the property. William

Allen contacted the Respondent or his office on approximately "a couple of dozen" occasions between 1982 and 1984 to determine what action was being taken to clear the title to the property. The Respondent advised Allen on some of these occasions that the matter was "being taken care of."

When no action had been taken to open an estate or clear the title by June, 1984, Allen hired another attorney who opened an estate for Charles J. Allen.

From the foregoing findings we conclude that the Respondent violated Disciplinary Rule 6–101(A)(3) of the *Code of Professional Responsibility for Attorneys at Law* by neglecting, for almost three years, to admit the will to probate or to clear the title to the real property. Such conduct is violative of Disciplinary Rule 7–101(A)(2) of the *Code* in that the Respondent failed to carry out his contract of employment.

Under Count II, we find that during September, 1982 Jeanette Fleenor consulted with Respondent about gaining her husband's release from the Indiana State Farm. On June 23, 1980 Fleenor's husband, Bobby, had been sentenced to serve two consecutive five-year sentences.

Fleenor misrepresented certain facts surrounding her husband's conviction. Based upon these misrepresentations, the Respondent indicated probable success in gaining Bobby Fleenor's release from incarceration. Fleenor borrowed money in order to retain Respondent, and, by December, 1981, Fleenor had paid to the Respondent $500.00.

Upon reviewing the facts, checking the Court record and after consulting with the Prosecutor, the Respondent discovered that the representations made by Jeanette Fleenor were not true. He discovered that Bobby Fleenor had been advised of all his rights and had entered into a Plea Agreement with full knowledge of all the consequences.

Fleenor had also represented that she had a terminal illness and wanted to have her husband home to help take care of their children. Respondent advised that if she did have a terminal illness that this fact could be used as a basis for filing a petition for clemency. The Respondent had a conference with Bobby Fleenor at the Indiana State Farm and advised him that, in Respondent's opinion, the guilty plea was entered after proper advice. He also advised that, if Jeanette Fleenor did in fact have a terminal illness, the Respondent would attempt to file a petition for clemency.

The Respondent repeatedly attempted to obtain medical information from Jeanette Fleenor to establish that she did, in fact, have a terminal illness, but Fleenor failed to provide such information. There were no other legal grounds upon which the Respondent could gain Bobby Fleenor's release. The Hearing Officer concluded, and this Court agrees, that the findings fail to establish misconduct under this Count.

Under the charges of Count III, we find that the Respondent prepared the Last Will and Testament of Samuel Judd in May, 1981. The will named the Respondent as Executor. Samuel Judd died on May 21, 1981, and the Respondent opened an estate in the Madison Superior Court. At the time of his death, Judd owned a motor vehicle and one piece of real estate in Anderson, Indiana. From May, 1981 to July 20, 1983, the Respondent received a total of $4,425.00 as assets of the estate. The Respondent did not establish an estate bank account, but deposited the funds in his trust account. During the same period of time the Respondent paid out $822.46 on behalf of the estate. On July 20, 1983, the trust account should have contained $3,602.54 attributable to the Judd Estate. Between July 20, 1983 and March 31, 1984, the balance in Respondent's trust account was frequently and consistently below $3,602.54. The Respondent did not maintain complete records of all funds which came into his trust account. He did not file any accounting of his activities in the Estate of Samuel Judd, nor make an accounting to the beneficiaries.

During the times when the trust account balance was below $3,602.54, the Respon-

dent used the funds from the trust account to pay the expenses of a ward for whom Respondent was a guardian, to make payments to his personal account, and to make payments and disbursements to other clients whose funds were placed in the trust account during the interim. On eleven occasions between July 20, 1983 and March 31, 1984, checks from Respondent's trust account were not honored due to insufficient funds.

Three thousand dollars of the funds received by the Respondent on behalf of the estate were funds paid by Jackelyn Ellingwood, on July 20, 1983, for the purchase of the real property.

On September 12, 1983, the Respondent filed a report of sale of property in the Madison Superior Court. As a result of the report, the Respondent was ordered to deliver the deed of the property to Jackelyn Ellingwood and to apply the money received as reimbursement for funeral expenses which had been paid by Betty Judd.

The Respondent has not delivered the deed nor reimbursed Betty Judd as ordered by the Court.

From the foregoing findings, this Court concludes that the Respondent has violated Disciplinary Rules 1–102(A)(1), (4) and (6) of the *Code of Professional Responsibility for Attorneys at Law* by diverting estate funds to his own personal use and the use of others. By his failure to maintain proper records of his receipt and expenditure of estate fund, and his failure to render accountings, the Respondent has violated Disciplinary Rules 9–102(A) and (B) of the *Code of Professional Responsibility for Attorneys at Law.*

The Respondent has neglected a legal matter entrusted to him and has failed to carry out his contract of employment, thereby violating Disciplinary Rules 6–102(A)(3) and 7–101(A)(1) and (2) of the *Code of Professional Responsibility for Attorneys at Law.*

 Having concluded that the Respondent has engaged in misconduct, an appropriate sanction must now be assessed.

In so doing, this Court takes into consideration the specific acts of misconduct, its impact on the public, this Court's responsibility to preserve the integrity of the Bar, and the risk, if any, to which we would subject the public by permitting the Respondent to continue in the profession or be reinstated at some future date. *In re Allen* (1984), Ind., 470 N.E.2d 1312, *In re Aungst* (1984), Ind., 467 N.E.2d 698, *In re Welke* (1984), Ind., 459 N.E.2d 725. In this case the Respondent, by misusing clients' funds and neglecting clients' interests, has breached the most elementary precepts of his professional and fiduciary duties. Under such circumstances, this Court finds that a substantial period of suspension from the practice of law is warranted.

IT IS, THEREFORE ORDERED, that the Respondent be, and he hereby is, suspended from the practice of law for a period of three (3) years, beginning October 21, 1985.

Costs of this proceeding are assessed against the Respondent.