**In the Matter of David L. MORTON.**

**No. 585S213.**

Supreme Court of Indiana.

Feb. 27, 1987.

Richard L. Russell, Kokomo, for respondent.

William G. Hussman, Jr., Staff Atty., Indianapolis, for Indiana Supreme Court Disciplinary Com'n.

**PER CURIAM**

This case is before us on a two-count Verified Complaint for Disciplinary Action brought by this Court's Disciplinary Commission. Pursuant to Indiana Rules A.D. 23, a Hearing Officer, appointed by this Court, has conducted a hearing and now submits to this Court his findings and recommendations. Neither party has challenged the Hearing Officer's report.

Under Count I of the complaint filed in this cause, Respondent is charged with violating Disciplinary Rules 9–102(B) and 1–102(A) of the *Code of Professional Responsibility for Attorneys at Law.*

Upon our review of the matters now before the Court, we find under this Count that in 1983 Robert Solazzi retained the Respondent to represent him in matters relating to Solazzi's commitment to the Logansport State Hospital. In March of 1984 the Respondent received $519.00 in Social Security Disability payments on behalf of Solazzi; in April, May and June of 1984, he received payments in the amount of $504.00 each. The Respondent deposited those funds in the account of David L. Morton, Trustee, First National Bank of Logansport. Thereafter, Solazzi contacted the Respondent from time to time regarding disbursement of the funds, and the funds were provided to Solazzi as requested.

Beginning in April, 1984, Solazzi's funds were removed from the trust account and placed in the Respondent's business and/or personal checking account. During the period from March through June, 1984, the Respondent sent to Solazzi the following sums: (a) $500.00 Cashier's Check on April 9, 1984; (b) $219.00 by wire transfer on May 7, 1984; and (c) $200.00 by a Cashier's Check on June 16, 1984. The funds for the first and third payment were withdrawn from a different personal account and not from either the trust or business accounts. The Respondent also provided Solazzi with funds for bus fare to his home in Northern Illinois. After June 19, 1984, Solazzi requested Respondent to account for and pay over to Solazzi the balance of funds; the

Respondent failed to render an accounting or to return any funds to Solazzi.

Thereafter, Solazzi retained attorney Larry E. Ohlson to assist in the recovery of the funds from the Respondent. Ohlson attempted to contact the Respondent by phone and also wrote four letters, all without success. The Respondent did, however, direct the July Social Security Check to Solazzi in care of Ohlson.

Between March, 1984 and June 1984, the balance of funds in Respondent's trust account was frequently and consistently below the amount he should have held for Solazzi; the account was also frequently overdrawn. During the period from April, 1984 through and including July 1984, the Respondent converted Solazzi's funds for his own personal and business use and thereby violated Indiana Code 35–43–4–3, a statute defining criminal conversion. On July 18, 1985, the Respondent did provide an accounting and a Cashier's Check in the amount of $769.98 to Solazzi; these, however, were returned addressee unknown by the United States Postal Service.

From the foregoing findings we conclude that the Respondent failed to maintain complete records, to render an appropriate accounting and to pay over to the client, as requested, funds belonging to the client, all in violation of Disciplinary Rule 9–102(B) of the *Code of Professional Responsibility for Attorneys at Law.* The Respondent further violated Disciplinary Rule 1–102(A) in that he engaged in illegal conduct involving moral turpitude, conduct involving dishonesty, fraud, deceit or misrepresentation and conduct that adversely reflects on his fitness to practice law.

In Count II the Respondent is charged with violating Disciplinary Rules 6–101(A) and 7–101(A)(2) and (3) of the *Code of Professional Responsibility for Attorneys at Law.* We now find that on March 26, 1984, Rita Lawrence retained the Respondent to represent her in an appeal of a denial of Florida unemployment benefits. On April 18, 1984, the Respondent was granted leave to appear in the State of Florida District Court of Appeals, First

District, in the case of *Rita M. Lawrence v. Unemployment Appeals Commission.*

After entering his appearance, the Respondent attempted to secure evidence to present to the District Court of Appeals as the Lawrence claim lacked a meritorious basis due to lack of evidence. During this period, the Respondent did not file a brief or otherwise request the Court to hold the record open for additional evidence, specifically a Letter of Violation, which the client wished to introduce as newly discovered evidence. The Lawrence appeal was dismissed for want of prosecution on August 2, 1984.

On August 14, 1984, Lawrence received a Letter of Violation which Respondent filed with the Court of Appeals together with a Motion to Reconsider the dismissal for want of prosecution. The Motion to Reconsider was denied. The rights of Rita Lawrence to obtain damages that she seeks are still preserved and she is still awaiting a response from the appropriate governmental agency regarding her claims.

We agree with the Hearing Officer's conclusions that the record fails to disclose the appellate requirements that Respondent was to follow in the Florida Court of Appeals in the Lawrence case. The dismissal of the appeal for lack of prosecution does not, in and of itself, under the facts presented here, constitute misconduct.

Upon finding that the Respondent did engage in misconduct under the first count, we must assess the appropriate sanction. The findings here reveal an abhorrent form of breach of professionalism, the mishandling and conversion of client's funds. These acts indicate a lack of fitness to serve in any position of trust or to practice law. We are, however, not unmindful that the Respondent did eventually return the misappropriated funds, albeit after it became necessary for the client to obtain other counsel for that purpose and long after the request for refund had been made.

In light of these considerations and the findings in this case, we conclude that a period of suspension of not less than three (3) years is appropriate under the circumstances of this case.

IT IS, THEREFORE, ORDERED, ADJUDGED AND DECREED that the Respondent, David L. Morton, who was suspended from the practice of law on January 7, 1986, pending the outcome of this proceeding, is hereby suspended from the practice of law for a period of not less than three (3) years, beginning January 7, 1986.

Costs of this proceeding are assessed against the Respondent.

SHEPARD, Justice, concurring in part and dissenting in part.

While I concur with the majority's finding that Morton is guilty of misconduct, I cannot join in the decision to sanction his actions with a three year suspension. My review of similar disciplinary actions indicates that this penalty is disproportionately high.

The majority has described well Morton's misdeeds. He failed to account properly to his client for some $2000 collected on his behalf and failed to turn over the client's funds promptly when requested to do so. Only after the client hired counsel to assist in pursuing his demands did Morton comply. While holding the client's money, respondent made personal use of it.

While I share the majority's approbation of this conduct, I believe this Court must heed previous decisions when considering an appropriate sanction. Equitable treatment requires that Morton's conduct be compared to past cases involving the misuse of client's funds. In the eighteen months preceding the submission of this case, the Court has decided eight similar cases. The resulting sanctions varied from a public reprimand to disbarment. What follows is a description of each case beginning with the most severe.

*In re Brault* (1984), Ind., 471 N.E.2d 1124.

Sanction: Disbarment.

Charged with one count of misconduct, Brault failed to close the estate of a client for five years, ignored Lake Superior

Court's order to distribute estate assets of $16,697, failed to establish a separate trust account for the assets and converted the assets to his own personal use. "Misuse of clients' funds will not be tolerated, and this Court has often expressed its strong disapproval of such actions." 471 N.E.2d at 1125. In explaining its disbarment of Brault, this Court cited three factors: "... the extreme seriousness of the misconduct, its negative impact on the public, and this Court's responsibility to preserve the integrity of and to maintain a competent Bar ..." 471 N.E.2d at 1125.

*In re Burge* (1985), Ind., 474 N.E.2d 991.

Sanction: Disbarment.

Charged with five separate counts of misconduct, Burge had failed to pursue legal action on behalf of clients (while informing the clients he had done so), as the result of which failure his clients' posture in the litigation was prejudiced. On one occasion, Burge deposited money of a client totalling $2,545 into his personal account, failed to segregate the funds from his own money, and failed to account properly for the money. This Court cited the seriousness of the acts and their negative impact on the public as warranting disbarment.

*In re Wirt* (1985), Ind., 482 N.E.2d 721.

Sanction: 3 year suspension.

Wirt was charged with two separate counts of misconduct. In 1982, Wirt accepted $200 from a client to settle the estate of the client's deceased father. He failed to do so for three years, at which time the client retained another attorney.

Also in 1982, as the executor of a client's will, Wirt misused $3,600 of the estate's assets. Instead of establishing a separate estate account, he deposited the money into a general trust fund account. Wirt failed to account properly for the funds and failed to maintain complete records. The account was overdrawn eleven times during a ten month period. Wirt failed to reimburse the deceased's wife for funeral costs from the estate's assets as ordered by the Madison Superior Court. This Court reinforced its strong disapproval for such misconduct by stating, "the Respondent, by misusing clients' funds and neglecting clients' interests, has breached the most elementary precepts of his professional and fiduciary duties." 482 N.E.2d at 723. This Court also noted another criteria by which to measure misconduct: the risk to the public of permitting the Respondent to continue in the profession or be reinstated at some future date. 482 N.E.2d at 723.

*In re Watson* (1985), Ind., 482 N.E.2d 262.

Sanction: 1 year suspension.

Charged with one count of misconduct, Watson had represented a client in litigation involving the estate of the client's deceased husband. As partial payment for legal services, Watson received a $7,500 interest free loan from the client. This loan was to be repaid upon the conclusion of the litigation. Watson failed to apprise his client of the adverse interests involved in such an unsecured loan payable on an uncertain date. Nor did Watson advise his client to seek independent legal advice concerning the loan. One year later, Watson filed bankruptcy and listed this $7,500 debt on the bankruptcy petition. Eleven months later, the client terminated the estate's trust and demanded repayment of the $7,500 loan. At this time, Watson informed the client of his bankruptcy action.

*In re Bolden* (1985), Ind., 484 N.E.2d 571.

Sanction: Suspension for a period of not less than six months.

Charged with five counts of misconduct, Bolden was retained in November, 1981, by a client to organize a business. In exchange for legal work, Bolden was to receive an interest in the venture. Two other investors each placed in his care $500 representing their respective interests. These funds were to be kept in Bolden's trust account until all remaining shares were sold. The venture never started. Thereafter, Bolden failed to return the funds promptly to either investor or to render a proper accounting. The money was returned almost two years later.

On four other occasions, Bolden neglected his clients and their interests by:

1) Failing to appear in court for a hearing which resulted in the client's incarceration;

2) Agreeing to a settlement without receiving the prior approval and consent of the client;

3) Failing to notify a client of an outstanding arrest warrant against the client, and

4) Issuing eighteen bad checks during a two month period.

We concluded: "The Respondent ... has breached his fiduciary duty by failing to account for and promptly return funds belonging to others...." 484 N.E.2d at 572.

*In re Jackson* (1985), Ind., 474 N.E.2d 994.

Sanction: Suspension for a period of not less than six months.

Charged with four counts of misconduct, Jackson, in the first count, received $110 from a client to file a small claim, yet failed to file a claim or take a defendant's deposition in the claim. In count two, Jackson received $200 to represent a client at a bond reduction hearing, yet failed to appear at the hearing. When the client requested the return of $200, Jackson delayed two months and returned only $150. In count three, Jackson was retained to represent a client in two criminal matters. She failed to maintain proper contact with the federal courts concerning these matters. In count four, Jackson deposited a $500 check in her personal account even though it was payable to someone who was not a client or even an acquaintance.

*In re Yussmann* (1986), Ind., 487 N.E.2d 161.

Sanction: Public Reprimand.

Charged with one count of misconduct, Yussmann, as an associate with a law firm, received $1,420 from a client in two payments over two weeks. This money was to be deposited in the firm's master accounts for payment of attorney fees, expert fees, expenses, and court costs. Yussmann, however, deposited the money in his personal account. Four days after receiving the second payment from the client, he resigned as an associate with the firm. At this time, his personal account contained no more than $100 in unencumbered funds. Subsequently, all of the funds were paid over to the firm.

*In re Briscoe* (1984), Ind., 471 N.E.2d 304.

Sanction: Public Reprimand.

Charged with one count of misconduct, Briscoe was retained by a client to file a bankruptcy petition. Briscoe failed to provide the service for which he was hired, failed to repay $360 in advanced fees until the Huntington County Court ordered the money's return, and ignored the court's order to return the client's file and to pay court costs until after disciplinary action had begun.

In determining a proper sanction, this Court found several mitigating circumstances. Briscoe's client lived outside of the county and was not able to come to the attorney's office due to an outstanding body attachment. Briscoe had tried to reach the client at home without success. Contact became more difficult because the client moved several times in a two and a half year period. Briscoe, upon contacting his client at the end of this two and a half years, said that he would no longer represent the client. His client sued for breach of contract and won.

In these previous decisions, a set of criteria by which to judge misconduct has emerged. These criteria are:

1) seriousness of the misconduct,

2) negative impact on the public,

3) effect on the integrity and competency of the bar, and

4) risk to the public of allowing respondent to continue in the profession.

These criteria should not be applied independently from past cases. On the contrary, a given penalty should be consistent with those imposed earlier for similar violations. If these criteria are used to compare Morton's conduct with earlier cases, it appears that the case at bar is less serious than the cases of *Bolden* and *Jackson* (both six month suspensions), yet more severe than *Yussmann* (public reprimand).

Bolden committed five counts of misconduct, two counts involved the misuse of funds. For two years, he failed to return $1,000 to two investors. Morton failed to return $769 for one year. Bolden also issued eighteen bad checks in a two month period, some to clients. In addition, Bolden prejudiced his clients by failing to appear in court, which resulted in the client's incarceration. Clearly, Bolden presents a much greater risk to the public than Morton.

Jackson was charged with four counts of misconduct, three of which involved the misuse of funds. One charge involved cashing an unauthorized check. In addition, she neglected her clients' interests on at least three occasions. In this way, she had demonstrated a pattern of neglect that reflected on her competency and integrity. While Morton's failure to forward his client's money can hardly be considered positive, he did not ignore pressing legal matters as did Jackson.

Similarly, Morton's conduct warrants a more severe penalty than Yussman's public reprimand. Morton was representing a client who had been committed to the Logansport State Mental Hospital. While the misuse of any client's funds is inexcusable, the misuse of a disabled client's funds is particularly reprehensible. Most importantly, Morton exacerbated this misconduct by waiting to make final payment to his client until after this disciplinary action had begun.

Other factors also exist which suggest a three year suspension is inconsistent with past disciplinary actions.

Morton was charged with only one count of misconduct. Of the six recent cases more severe than Morton's, four involved multiple charges and two involved substantially more money (*Brault*, $16,697; *Watson*, $7,500).

Finally, the hearing officer reported that Morton had violated Ind. Code § 35-43-4-3 by converting his client's funds for his own use. However, at least four of the last eight disciplinary cases also involved conversion, yet conversion was not charged in any of them. (*Brault, Wirt, Bolden* and *Yussmann*). There is no basis upon which to distinguish Morton's act of conversion from the rest. While Morton is undoubtedly guilty of conversion, that fact does not sustain enhancement of his sanction above those previously imposed.

That Morton is guilty of misconduct is indisputable. However, I do not agree with the majority's decision to suspend Morton for three years. While precedent suggests that Morton's conduct merits no more than the six months suspensions ordered in *Bolden* and *Jackson*, imposition of penalties is by nature somewhat imprecise and it might be that others would find a somewhat stiffer penalty appropriate. Nevertheless, a three year suspension is manifestly outside the range of our past treatment of others. It is for this reason that I dissent from the decision concerning penalty.