**In the Matter of Gregory A. YOUNG.**

**No. 184S14.**

Supreme Court of Indiana.

Sept. 19, 1985.

724

Kevin P. McGoff, Greenfield, for respondent.

Gregory M. Fudge, Staff Atty., Indianapolis, for Ind. Supreme Court Disciplinary Com'n.

## DISCIPLINARY ACTION

PER CURIAM.

The Respondent in this case has been charged with three counts of professional misconduct. A Hearing Officer appointed pursuant to Admission and Discipline Rule 23, following a hearing, has submitted his Findings of Fact, Conclusions of Law and Recommendation. The Respondent now seeks review contending that the Disciplinary Commission failed to meet its burden of proof and that the Hearing Officer's conclusions and recommendations are inconsistent with the findings of fact. Both parties have briefed their respective positions.

Respondent's contentions will be considered within the review process and resolved by this Court's ultimate determination. There being no challenge to the findings of fact submitted by the Hearing Officer, we accordingly adopt them as our own and specifically find that the Respondent, Gregory A. Young, is an attorney admitted to the Bar of the State of Indiana on April 27, 1979, and is subject to the disciplinary authority of this Court.

In that all three counts arise out of the same series of events, we now find as to all

counts that in December of 1980, the Respondent and his fiancee entered into a conditional sales contract with John and Neoral Cody for the purchase of a house. The contract provided for a purchase price of $34,000, a down payment of $1,700 and monthly payments of $450, with an interest rate of 14½% per year on the balance. Payments were to be made until the total sum was paid off.

At time of closing, the Codys did not have sufficient funds to pay the realtor's entire commission of $2,380 and, thus, executed a promissory note in favor of Maxine Neiger, the agent. The note was for a balance of $1,680, payable in one year and bearing an interest rate of 14½% per year. The Codys were unable to pay off the note upon its maturity and Neiger filed suit against them. The Codys contacted the Respondent and requested that he represent them in the suit. The Respondent advised Mr. Cody that the Respondent should not represent them because of his involvement in the buyer-seller relationship. The Respondent did advise the Codys regarding possible affirmative defenses and a potential counterclaim. They also discussed the possibility of bankruptcy. The Codys were emphatic that they wanted the Respondent to represent them; they did not want to counterclaim but only to have a judgment entered for the smallest amount possible. The Respondent filed his appearance on their behalf on January 27, 1982.

At this time, the Respondent was aware that the Codys did not have the money to pay the realtor and that they depended on Respondent's payment under the contract to make their mortgage payment on the property. Before the Respondent undertook the representation, he failed to advise the Codys that the lawsuit may reasonably result in: (1) the Respondent becoming a garnishment defendant in the event Neiger pursued proceedings supplemental; (2) the Respondent becoming a potential plaintiff against the Codys with regard to a quiet title action to the real estate; and (3) the Respondent being a defendant in the event Neiger sought pre-judgment attachment of his payment to the Codys. The Respondent also failed to advise the Codys that, should his payment to them be garnished causing them to default on their mortgage, a foreclosure action could follow, at which time, he would be able to bid for the property and purchase it for less than the contract price.

The parties reached an agreement on the note and an agreed judgment was entered. Under its terms, the Codys were to pay $100 per month, even though they felt they did not have the additional funds. The foregoing action was the extent of Respondent's representation of the Codys.

The Codys made no payments to Neiger under the agreed judgment. Prior to the execution of the agreed judgment, the Respondent had discussed with the Codys the possibility that he and his fiancee could pay Neiger the $100 per month if they had extra money. In the event they made the payment, the Codys were to credit the amount against the outstanding balances on the real estate sales contract. The Respondent made one such payment in 1982.

In February of 1983, the Codys assigned Respondent's contract payments to Commercial Credit Corporation who held a second mortgage on the subject real estate. In accordance with such assignment, the Respondent wrote two personal checks to Commercial Credit, on August 24, 1983 and on September 7, 1983. The Checks were drawn on Respondent's personal Indiana National Bank account for $378.99 and $757.98 respectively. They were returned to the Respondent due to nonsufficient funds in the account. The Respondent issued the checks knowing that his account had insufficient funds, but planned to cover the checks with money he was expecting to receive from clients for legal services already performed. He represented to Commercial Credit that he would satisfy the insufficiencies, but he failed to do so. Respondent's payments on the real estate sales contract were two months in arrears. Commercial Credit advised the Codys of the arrearage in the assigned payments,

and the Codys gave the Respondent notice of their intent to take possession of the property on October 7, 1983. At this time, Respondent and his fiancee had between $4,000 and $5,000 of equity in the property. Due to this, the Codys and the Respondent came to an understanding so that the Respondent and his fiancee would not repay the delinquent payments but would forego any rights. The Codys themselves were without sufficient funds to pay the arrearage and planned to refinance their indebtedness into a single mortgage.

On October 6, 1983, the Codys went to the Respondent's office to obtain a quit claim deed which they needed in order to refinance the property. Respondent's fiancee refused to sign the deed unless she received a release from the Codys. The Respondent then proceeded to draft a handwritten release for the Codys' signature. The release provided, in pertinent part, that the Codys release and forever discharge the Respondent and his fiancee, their assigns and representatives, from any and all manner of actions, suits, accounts, contracts, debts, claims and demands of whatever kind of character, at law and in equity, arising from the aforementioned conditional sales contract. The Respondent suggested that the Codys take the release to their attorney, but they would not do so, indicating that it was satisfactory. The Hearing Officer found, and we agree, that the Respondent's intent was to secure a release of the obligations under the contract and not a release for any professional malpractice.

After the Respondent and his fiancee deeded any interest they had in the property back to the Codys, the Codys resold the property. The judgment obtained by Neiger for her sales commission was collected in full and released on May 31, 1984, when the Codys paid it off, with approximately $635 in post judgment interest.

Under Count I, the Respondent is charged with accepting employment, without full disclosure and consent, in a matter where his professional judgment reasonably may be affected by his own financial, business, property or professional interests, in violation of Disciplinary Rule 5-101(A); with entering a business transaction with a client without full disclosure and consent where there were differing interests and the client expected the Respondent to exercise professional judgment concerning the transaction, in violation of Disciplinary Rule 5-104(A); with making an aggregate settlement of claims, in violation of Disciplinary Rule 5-106(A); and with engaging in conduct which adversely reflects on his fitness to practice law, in violation of Disciplinary Rule 1-102(A)(6) of the *Code of Professional Responsibility.*

■ The Hearing Officer concluded that the evidence was insufficient to establish misconduct under Disciplinary Rules 5-104(A) and 5-106(A). We concur and now so accordingly find.

■ The Respondent further argues as to the remaining charges under Count I that any potential conflict of which he failed to advise the Codys was not foreseeable at the time the Respondent undertook the representation and that Respondent's professional judgment would not have been affected by his own financial interests.

We disagree. As the events demonstrated, the potential conflict was not only reasonably foreseeable but did occur. Given the Codys' financial position and Respondent's awareness of these circumstances, it was reasonably foreseeable that the Respondent's individual interests could be affected and were potentially adverse. We, thus, conclude that, by the conduct set out above, the Respondent violated Disciplinary Rules 5-101(A) and 1-102(A)(6) of the *Code of Professional Responsibility.*

■ Under Count II, the Respondent is charged with violating Disciplinary Rule 6-102(A) by attempting to exonerate himself from or limit his liability to his client for his personal malpractice. The Hearing Officer concluded, and we agree, that the evidence is insufficient to prove misconduct under this charge.

In Count III, the Respondent is charged with engaging in conduct involving dishonesty, fraud, deceit or misrepresentation, in violation of Disciplinary Rule 1–102(A)(4) and engaging in conduct which adversely reflects on his fitness to practice law, in violation of Disciplinary Rule 1–102(A)(6). By issuing and tendering the two checks to Commercial Credit, while knowing that they were not covered, and later promising but again failing to satisfy the insufficiency, the Respondent engaged in professional misconduct as charged under Count III of the Verified Complaint.

In view of our finding of misconduct, it is now the duty of this Court to assess an appropriate sanction. The Respondent, being fully aware of his and the Cody's financial status, undertook employment in a matter in which he was personally and financially involved, without fully disclosing to his clients all potential conflicts. Respondent's actions surrounding the two checks returned for nonsufficient funds placed his clients in default on their mortgage. The Respondent was fully aware of their financial position and their reliance on his contractual obligation. In light of these considerations and by reason of the misconduct set out above, it is this Court's assessment that a period of suspension from the practice of law is warranted.

IT IS THEREFORE, ORDERED that the Respondent be and he hereby is suspended from the practice of law for a period of thirty (30) days beginning October 21, 1985.

Costs of this proceeding are assessed against the Respondent.

SHEPARD, J., not participating.