**In the Matter of Daniel C. McCARTHY.**

No. 41S00–9312–DI–1324.

Supreme Court of Indiana.

July 16, 1996.

Daniel C. McCarthy, Greenwood, Thomas A. Deal, Speedway, for Respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, for Indiana Supreme Court Disciplinary Commission.

### DISCIPLINARY ACTION

PER CURIAM.

In the *Statement of Circumstances and Conditional Agreement for Discipline* which has been tendered to this Court for final approval pursuant to Ind.Admission and Discipline Rule 23, Section 11(c), the respondent admits that he violated the *Rules of Professional Conduct for Attorneys at Law* and that he therefore should be suspended from the practice of law. We approve the agreement and in this opinion set forth the facts and circumstances of this case.

The respondent was admitted to the practice of law in this state in 1988. This case formally commenced with the Disciplinary Commission's filing of a *Verified Complaint for* Disciplinary Action in December 1993, which was amended in September 1994. Pursuant to Count I of the amended complaint, the parties agree that the respondent violated Ind.Professional Conduct Rules 1.5(c) and 1.7(a). The facts supporting the violations are as follow. In 1988, the respondent asked an accountant (the "accountant") to assist him by providing accounting services in relation to a representation the respondent was providing to a client (the "client"). The accountant agreed to do so. In 1990, the accountant asked the respondent to assist him in collecting a fee from a construction company. The respondent agreed

to do so for one-third of the amount collected or for attorney fees that might be awarded. That fee arrangement was never reduced to writing.

In February 1991, the respondent asked the accountant about progress on the accounting services he had agreed to provide. The accountant informed him that he would not be able to complete the work. At about that same time, the respondent received a check for $281 from the construction company as payment of the fee owed to the accountant. On April 3, 1991, the respondent deposited the check into his attorney trust account and thereafter held the funds in trust.

On October 17, 1991, the respondent filed suit on behalf of his client and himself against the accountant for breach of oral contract, based on the the accountant's failure to provide services for the client's case as promised. As of that date, the respondent still held the accountant's funds that were recovered from the construction company in his attorney trust account.

Indiana Professional Conduct Rule 1.5(c) provides, in relevant part:

A contingent fee agreement shall be in writing and shall state the method by which the fee is to be determined, including the percentage or percentages that shall accrue to the lawyer in the event of settlement, trial or appeal, litigation and other expenses to be deducted from the recovery, and whether such expenses are to be deducted before or after the contingent fee is calculated. Upon conclusion of a contingent fee matter, the lawyer shall provide the client with a written statement stating the outcome of the matter and, if there is a recovery, showing the remittance to the client and the method of its determination.

By failing to reduce to writing his contingency fee arrangement with the accountant, the respondent violated Prof.Cond.R. 1.5(c).

Indiana Professional Conduct Rule 1.7(a) provides:

A lawyer shall not represent a client if the representation of that client will be directly adverse to another client, unless:

(1) the lawyer reasonably believes the representation will not adversely affect the relationship with the other client; and

(2) each client consents after consultation.

The respondent's representation of himself and his client in the lawsuit against the accountant occurred when the accountant was also the respondent's client in the collection action. The respondent failed to obtain the consent of either client for the adverse representation and there is no indication that he reasonably believed that the representation of his client in the lawsuit against the accountant would not "adversely affect" his attorney-client relationship with either. As such, we find the respondent also violated Prof. Cond.R. 1.7(a).

Pursuant to Count II, we now find that in November 1989, a husband (the "husband") retained the respondent to represent him in a dissolution action. On March 15, 1990, the presiding trial court judge entered a restraining order against the husband, prohibiting the husband from encumbering, selling, altering, or otherwise disposing of any marital assets. The respondent was fully aware of the restraining order and its directives. On December 23, 1993, the respondent met with the husband and the husband's girlfriend. The husband informed the respondent that he wanted to retaliate against his estranged wife by leaving as much property as possible to his girlfriend. The respondent was also informed that the husband was dying of terminal cancer and did not expect to live a full year thereafter. Although the respondent reminded the husband of the terms of the restraining order, the husband proceeded to disperse many of his assets without the respondent's knowledge. In early February 1994, the husband asked the respondent to prepare a quitclaim deed for the purpose of conveying the husband's right, title, and interest in the marital home, which he and his estranged wife jointly owned as tenants by the entireties, to his girlfriend. After reminding the husband, by letter, of the terms of the restraining order, the respondent prepared the requested quitclaim deed even though he believed it would be void as a matter of law. He made the deed available for pick-up by the husband's agent.

The husband executed the deed on February 8, 1994, and recorded it on February 13, 1994. At that time, the wife was not aware of the transaction.

The husband died on March 19, 1994, while the dissolution was still pending. Another attorney became the personal representative of the husband's estate, thereby displacing the respondent in the pending dissolution action. The estranged wife eventually learned of the husband's attempt to convey his interest in the martial home. On April 28, 1994, she filed a petition for rule to show cause and for sanctions, seeking a finding of contempt and an award of sanctions against the husband's estate and against the respondent. A hearing on the petition was held in the court where the dissolution was pending. On July 5, 1994, the judge issued findings of fact, conclusions of law and a judgment entry, which stated in relevant part:

21. That [respondent] either aided, conspired with or abetted the [husband] in actions that were in violation of this Court's Restraining Order.

22. That as a direct result of [the respondent's] actions the Petitioner has been forced to incur additional legal expenses and will be forced to incur future expenses including legal expenses.

23. That the Court finds [the respondent] in contempt for either aiding, conspiring with or abetting the [husband] in violating this Court's Restraining Order.

Although the recorded quitclaim deed was in fact void as a matter of law, its practical effect was to place a cloud on the title of the marital property. The estranged wife suffered delay in obtaining financing for a debt consolidation loan and eventually had to resort to filing a formal complaint to nullify the deed. On July 18, 1994, the trial court judge ordered the estate to pay the estranged wife's attorneys $15,083.69 in attorneys fees in the divorce case. To date, there has never been any assessment of sanctions based on the contempt finding.

The Commission charged the respondent with violating Prof.Cond.R. 3.4(c), which provides:

A lawyer shall not:

(c) knowingly disobey an obligation under the rules of a tribunal except for an open refusal based on an assertion that no valid obligation exists.

We find that the respondent violated Prof. Cond.R. 3.4(c) by preparing the quitclaim deed on behalf of the husband when the respondent was aware of the existence of a restraining order prohibiting the husband from transferring the property.

The Commission also charged the respondent with violating Prof.Cond.R. 4.4, which provides:

In representing a client, a lawyer shall not use means that have no substantial purpose other than to embarrass, delay, or burden a third person, or use methods of obtaining legal evidence that violate the rights of such a person.

By preparing the quitclaim deed, the respondent violated Prof.Cond.R. 4.4 in that the act had no substantial purpose other than to hinder the estranged wife's full use of the marital property.

The respondent is also charged with violating Prof.Cond.R. 8.4(d), which provides: "It is professional misconduct for a lawyer to: ... (d) engage in conduct that is prejudicial to the administration of justice ..." The respondent's preparation of the quitclaim deed in light of the existing restraining order violated Prof.Cond.R. 8.4(d).

■ Having found misconduct, we now turn to the issue of proper sanction. The respondent and the Commission have agreed that a thirty-day suspension from the practice of law is appropriate in this case. Our analysis of proper sanction entails consideration of the nature of the misconduct, the duty violated by the respondent, any resulting or potential harm, the respondent's state of mind, our duty to preserve the integrity of the profession, the risk to the public should we allow the respondent to continue in law practice, and matters in extenuation, mitigation, and aggravation. *In re Reed,* 599 N.E.2d 601 (Ind.1992). The parties offer several factors they purport mitigate the severity of the respondent's misconduct in Count I. They agree that at the time the conflict of interest arose, the sole remnant of

an attorney-client relationship between the respondent and the accountant was the respondent's retention of settlement funds in trust for the accountant. The respondent made numerous unsuccessful attempts to arrange for the accountant to retrieve the funds before the respondent filed suit against him. Later, the dispute between the respondent and his client and the accountant was fully settled. The respondent's misconduct in Count II represents deliberate contravention of the specific directive of a tribunal. He simply chose to ignore the trial court's restraining order without even asserting a colorable claim that its legal obligations were invalid. Mindful of both the respondent's deliberate misconduct and the factors in mitigation, we conclude that a thirty-day suspension, although somewhat lenient, is within the acceptable range of appropriate sanctions in this case and thus accept the parties' agreed sanction.

It is, therefore, ordered that the respondent, Daniel C. McCarthy, be suspended for a period of thirty (30) days, beginning August 21, 1996.

Costs of this proceeding are assessed against the respondent.