**In the Matter of Richard N. BELL**

**No. 49S00–9702–DI–116.**

Supreme Court of Indiana.

Nov. 10, 1999.

Jon D. Krahulik, Indianapolis, IN, for the Respondent.

Donald R. Lundberg, Executive Secretary, Indianapolis, IN, for the Indiana Supreme Court Disciplinary Commission.

DISCIPLINARY ACTION

PER CURIAM.

The respondent, Richard N. Bell, improperly served both as counsel for, and partner in, a business for which accounting services were provided by a firm in which the respondent had an interest. He exacerbated these impermissible conflicts of interest by later suing the business and one of his business partners. Today we approve a *Conditional Agreement for Discipline*, pursuant to Ind.Admission and Discipline Rule 23, Section 11, between the respondent and the Indiana Supreme Court Disciplinary Commission, which will result in the respondent's suspension from the practice of law for thirty (30) days for engaging in this professional misconduct.

As a preliminary matter, we note the respondent was admitted to practice law in this state in 1975. Therefore, he is subject to the disciplinary authority of this Court.

The undisputed facts show that the respondent in late 1983 was a certified public accountant in an accounting firm. At that time, he also was an attorney. He sold his interest in the accounting firm at the end of 1983 to devote his professional career to law. As a condition of the sale, he was to receive 108 monthly installment payments and was required to protect the goodwill of the accounting firm. The accounting firm continued to insure him for accounting malpractice.

Shortly after the sale of the accounting firm, the respondent drafted papers creating a partnership to develop condominiums. He agreed to represent, as an attorney, both the general partner and the partnership. The respondent later invested in the partnership, and his former accounting firm provided accounting services to the partnership.

A fire destroyed the condominiums before completion. A dispute arose as to the fees to which the general partner was entitled under the partnership agreement drafted by the respondent. The respondent advised the partnership's accounting firm (to which he still was indirectly related) that the general partner, whom he represented, was not entitled to such fees. Relying on that legal opinion, the accounting firm reported to the general partner that he was not entitled to the fees. That approach was financially advantageous to the investors, who included the respon-

dent, some of the respondent's clients, and some of the accounting firm's clients.

A dispute over payment for the respondent's legal services to the general partner and partnership arose. The respondent filed suit against the general partner's company and the partnership and obtained a default judgment. The judgment later was set aside because the trial court found the respondent had violated his duty to the partnership and to the general partner by failing to advise them of his intent to proceed with that suit.

Instead of appealing the order setting aside the default judgment, the respondent filed an "Amended Complaint for Damages" which named the general partner and the partnership as defendants. The respondent signed the amended complaint under penalties of perjury and stated that the defendants owed him $14,675.43 for legal services performed since January 1984. The respondent later withdrew his complaint and admitted that some of the fees which he sought in the Amended Complaint had been paid.

On July 3, 1984, the respondent sent to the general partner and the limited partners a letter in which he resigned as attorney for the partnership. The letter stated the respondent was resigning because the general partner had failed to pay legal fees and maintain accurate accounting records. The letter alleged that the general partner was in violation of the partnership agreement because he allegedly owed the partnership money.

Based in part on the respondent's representations, one of the limited partners sued the general partner on October 16, 1985. The suit sought dissolution of the partnership, appointment of a receiver and an award of punitive damages. In that same month, the respondent, with proxies from other limited shareholders, voted to oust the general partner. In the face of that vote, the general partner resigned.

The general partner filed a counterclaim seeking damages from the respondent. The trial court entered judgment in favor of the general partner and against the respondent in the amount of $32,500 in compensatory damages and $50,000 in punitive damages.

These facts establish an improper intermixing of the respondent's personal and professional interests. We discussed the rules governing lawyers engaging in business transactions with their clients in *Matter of Strutz*, 652 N.E.2d 41 (Ind.1995), and that discussion bears repeating here:

> Under the *Professional Responsibility Code*, a lawyer may engage in a business transaction with a client only if the transaction satisfies standards designed to protect the client against an overreaching attorney. (footnote omitted) However, a lawyer is prohibited from entering into a business transaction with a client if they have "differing interests therein," and the client "expects the lawyer to exercise his professional judgment therein for the protection of the client, unless the client consents after full disclosure." *In re Watson* (1985), Ind., 482 N.E.2d 262, 264; *In re Aspinall* (1983), Ind., 455 N.E.2d 942, 943; D.R. 5–104(A). Moreover, under D.R. 5–101(A), a lawyer is prohibited from accepting employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial or business interests unless the client consents after full disclosure. *In re Young* (1985), Ind., 482 N.E.2d 723, 723. As we observed in *In re Welke* (1984), Ind., 459 N.E.2d 725:

> > The *Code of Professional Responsibility for Attorneys at Law* does not preclude an attorney from being an entrepreneur or engaging in any other lawful profession. However, it does provide that if there is a conflict between these personal interests and professional obligations, the latter must prevail. Only through adherence to these principles and enforcement of such standards can the integrity of the profession be maintained.

*Id.* at 730. Ethical Consideration 5–1 of the *Professional Responsibility Code* provided that a lawyer should exercise professional judgment "solely for the benefit of his client and free of compromising influences and loyalties." Ethical Consideration 5–3 added that even if a lawyer's property interests "do not presently interfere with the exercise of his independent judgment, but the likelihood of interference can reasonably be foreseen ..., a lawyer should explain the situation to his client and should decline employment or withdraw unless the client consents...after full disclosure." *See* Bruce A. Mann & Marcus P. Wilkinson, *The Role of Counsel in Venture Capital Transactions,* 46 Bus.Law. 770 (1991); Note, *Developments in the Law—Conflicts of Interest,* 94 Harv. L.Rev. 1244, 1286 (1981).

*Strutz,* 652 N.E.2d at 47–48.

The respondent and the Commission have stipulated that the respondent was an investor in the partnership, the attorney for the general partner, the attorney for the partnership, and the attorney for some of the limited partners, and that he had a business arrangement with the accountants for the partnership. Stipulation of Facts & Conditional Agreement for Disciplinary Action ("Stipulation") Ex. A ¶ 95. The respondent and the Commission also have stipulated that respondent did not make any written or oral communications to the general partner about the actual or potential conflicts of the respondent being a limited partner while he was also attorney for the general partner and attorney for the partnership. Stipulation Ex. A ¶ 45. The respondent and the Commission agree that the respondent accepted employment where the exercise of his professional judgment on behalf of his client would be or reasonably might be affected by his own financial, business, property, or personal interests. The respondent and the Commission also agree that the respondent accepted employment where the exercise of his independent professional judgment on behalf of a client would be or likely would be adversely affected by the acceptance of the employment. Under these circumstances, the respondent violated DR 5–101(A) [1] and 5–105(A).[2]

The respondent and the Commission stipulate that the respondent and the general partner had a lengthy dispute over legal fees due the respondent and that the respondent eventually sued to collect those fees. Stipulation Ex. A ¶¶ 73–78. The respondent and the Commission also stipulate that after the fire, "[t]he amount of money available for distribution to the limited partners, including [respondent], depended upon the collection of insurance proceeds, the denial of fees and other money to [the general partner], and the obtaining of any money from [the general partner] to the partnership. [Respondent] was

1. The respondent's conduct at issue arose before adoption of the *Rules of Professional Conduct for Attorneys at Law;* thus, he was charged under the *Code of Professional Responsibility.* DR 5–101(A) of those rules provided:

   Except with the consent of his client after full disclosure, a lawyer shall not accept employment if the exercise of his professional judgment on behalf of his client will be or reasonably may be affected by his own financial, business, property, or personal interests.

2. DR 5–105 provided:

   (A) A lawyer shall decline proffered employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by the acceptance of the proffered employment, except to the extent permitted under DR 5–105(C).

   (B) A lawyer shall not continue multiple employment if the exercise of his independent professional judgment in behalf of a client will be or is likely to be adversely affected by his representation of another client, except to the extent permitted under DR 5–105(C).

   (C) In the situations covered by DR 5–105(A) and (B), a lawyer may represent multiple clients if it is obvious that he can adequately represent the interest of each and if each consents to the representation after full disclosure of the possible effect of such representation on the exercise of his independent professional judgment on behalf of each.

aware of those facts." Stipulation Ex. A ¶ 85. The respondent and the Commission agree that the respondent continued multiple employment (*i.e.*, employment on behalf of the general partner, the partnership, and some of the limited partners) where the exercise of his independent professional judgment on behalf of a client would be or likely would be adversely affected by his representation of another client. Under these circumstances, the respondent violated DR 5–105(B).

The respondent also breached his professional responsibility to his client, the general partner, in several specific ways. The respondent and the Commission stipulate that the respondent alleged in the letter dated July 3, 1984, that the general partner had not paid legal fees, had not kept accurate accounting records and had improperly withdrawn $47,800 from the partnership. Stipulation Ex. A ¶ 103. They further stipulate that the letter was distributed to all limited partners without the general partner's permission and that it "defamed (the general partner) with false statements, inferences and innuendos that (the general partner) was dishonest, untrustworthy, and incompetent in his profession, office and occupation." Stipulation Ex. A ¶¶ 104—106.[3]

The parties also stipulate that the respondent obtained a default judgment on June 14, 1984, without notice to the general partner or the limited partnership. Stipulation Ex. A ¶ 101. They further stipulate that a limited partner, relying on the respondent's representations, sued the general partner for dissolution of the partnership, for the appointment of a receivership and for an award of punitive damages. Stipulation Ex. A ¶¶ 126–127. The respondent, armed with proxies from other limited shareholders, voted to oust the general partner from his position in October 1985, leading to the general partner's resignation. Stipulation Exhibit A ¶ 129. The respondent and the Commission agree that the respondent revealed or otherwise misused the confidences or secrets of his client and, thereby, under these circumstances, violated DR 4–101(B).[4] The respondent and the Commission further agree that the respondent caused prejudice or damage to his client during the course of representation and, thereby, under these circumstances, violated DR 7–101(A)(3).[5]

Since we have found professional misconduct, we must now determine an appropriate sanction. We recognize a mitigating circumstance in this case: that the respondent fully satisfied the judgment for $32,5000 in compensatory damages and $50,000 in punitive damages entered against him. With that in mind, the Commission and the respondent suggest a 30–day suspension with automatic reinstatement. Such a sanction is consistent with our resolution of similar cases. *See, e.g., Matter of Christoff,* 690 N.E.2d 1135 (Ind. 1997) (30–day suspension for prosecutor who threatened to revive dormant criminal

---

3. The Commission originally charged the respondent with violation of DR 1–102(A)(4) in connection with the misstatements made in the respondent's letter dated July 3, 1984. The Commission later determined the inaccuracies were not intentionally dishonest. The parties agree, and we find, that the evidence does not establish a violation of DR 1–102(A)(4).

4. DR 4–101 provided:

(B) Except when permitted under DR 4–101(C), a lawyer shall not knowingly:
(1) Reveal a confidence or secret of his client.
(2) Use a confidence or secret of his client to the disadvantage of the client.

(3) Use a confidence or secret of his client for the advantage of himself or of a third person, unless the client consents after full disclosure.
(C) A lawyer may reveal:
(1) Confidences or secrets with the consent of the client or clients affected, but only after a full disclosure to them.
(2) Confidences or secrets when permitted under Disciplinary Rules or required by law or court order.

5. DR 7–101(A) provided in relevant part:

A lawyer shall not intentionally: . . .
(3) Prejudice or damage his client during the course of the professional relationship, . . . .

investigation of attorney if attorney became candidate for prosecutor); *Matter of Maternowski*, 674 N.E.2d 1287 (Ind.1996) (30–day suspension for attorney who represented client who was uncertain whether to cooperate with government authorities where attorney had personal policy of not representing clients who cooperate with government);*Matter of McCarthy*, 668 N.E.2d 256 (Ind.1996) (30–day suspension for attorney who represented client and himself in an action against accountant who had agreed to perform services for them).

We are satisfied that a 30–day suspension is commensurate with the misconduct here. Accordingly, we order that the respondent be suspended from the practice of law for a period of thirty (30) days, beginning December 10, 1999, at the conclusion of which he automatically will be reinstated to the practice of law in Indiana.

The Clerk of this Court is directed to provide notice of this order in accordance with Admis.Disc.R. 23(3)(d) and to provide the Clerk of the United States Court of Appeals for the Seventh Circuit, the Clerk of each of the United States District Courts in this state, and the Clerk of each of the United States Bankruptcy Courts in this state with the last known address of the respondent as reflected in the records of the Clerk.

Costs of this proceeding are assessed against the respondent.

**J.T., Appellant–Respondent,**