In the Matter of Cecelia M.K. HEMPHILL, Respondent.

No. 55S00–1104–DI–243.

Supreme Court of Indiana.

Aug. 1, 2012.

*PUBLISHED ORDER FINDING MISCONDUCT AND IMPOSING DISCIPLINE*

Upon review of the report of the hearing officer, the Honorable Terry K. Snow, who was appointed by this Court to hear evidence on the Indiana Supreme Court Disciplinary Commission's "Verified Complaint for Disciplinary Action," and the Commission's Petition for Review, the Court finds that Respondent engaged in professional misconduct and imposes discipline on Respondent.

**Facts:** On the morning of December 5, 2008, Respondent encountered B.T. ("Father".) at the county courthouse, who told her that he had a custody hearing the following week in a divorce case. After some investigation, she learned that the family had been the subject of a Child in Need of Services ("CHINS") case involving the couple's son, J.T. (age 10) and daughter, D.T. (age 8), that the CHINS court had ordered Father to have only supervised visitation; and that the CHINS case was now closed. Father told her that his visitation was no longer supervised. Father mentioned that D.T. had told a Department of Child Services ("DCS") worker that the boyfriend of his wife ("Mother") had touched her inappropriately but that D.T. later said she made up the story because she wanted to live with Father. Based upon this statement alone, Respondent concluded that Mother's boyfriend had molested D.T. and that the children were in grave danger.

Respondent wanted to talk to the children alone, particularly D.T., so Respondent could see her reaction when asked about Mother's boyfriend. At Respondent's request, Father wrote a note to the principal of the children's school stating that she was Father's new attorney and that he gave her permission to pick the children up from school. When Respondent arrived at the school at about 2:55 p.m., the school secretary was alone in the school office. Both Mother and Father

were authorized to pick up the children from school. Respondent told the secretary that if Father had the right to pick them up, then the secretary had to release them to Respondent because she was his attorney and he asked her to pick up the children. The secretary refused at first but felt intimidated and eventually relented. The secretary then became very worried about the children and reported what happened to the school superintendent, who told the Morgan County Sheriff about the incident. When the Sheriff told Mother what had happened, she was terrified and became more upset as the evening wore on.

Meanwhile, Respondent called the children's sitter, who provided after-school care, and told her that she was Father's lawyer, that she had the children, and that she and the children were going to meet Father for dinner. Respondent refused to tell the sitter where they were. As Respondent continued driving with the children, she asked them general questions about their parents and Mother's boyfriend. Neither child mentioned physical abuse. They eventually met Father and had dinner together, after which Father departed.

Respondent then drove with the children through the back roads around Martinsville, looking for a birthday party D.T. had been invited to attend, relying on the children for directions. Respondent's cell phone had died and she was low on gas. Respondent stopped at several houses looking for the party, without success. Respondent eventually took the children to Mother's home at about 8:45 p.m.—nearly six hours after Respondent took them from school.

**Violations:** The Commission charged Respondent with violating the following Indiana Professional Conduct Rules:

4.1(a): Knowingly making a false statement of material fact to a third person in the course of

4.4(a): representing a client. 4.4(a): Using means in representing a client that have no substantial purpose other than to embarrass, delay, or burden a third person.

8.4(c): Engaging in conduct involving dishonesty, fraud, deceit or misrepresentation.

8.4(d): Engaging in conduct prejudicial to the administration of justice.

*Rules 4.1(a) and 8.4(c).* The hearing officer concluded that the Commission had not met its burden of proving by clear and convincing evidence that Respondent knowingly made a false statement of fact or engaged in dishonest conduct in violation of Rules 4.1(a) and 8.4(c). After a review of the record, we accept this conclusion.

*Rule 4.4(a).* The Commission alleges that by intimidating the school secretary into releasing the children to Respondent and by causing Mother great anxiety over their safety, Respondent used means that had no substantial purpose other than to burden third persons in violation Professional Conduct Rule 4.4(a). Respondent offered two reasons for taking the children from the school and keeping them for several hours without telling Mother where they were: (1) Respondent believed that she needed to speak to the children privately before the hearing the following week; and (2) she was concerned that without her intervention, the children would be abused for years to come. We agree with the hearing officer that both of Respondent's stated purposes could have been accomplished by more appropriate and effective means. No legitimate purpose was served by Respondent insisting that the secretary release the children from school and driving them around for

several hours without telling Mother where they were. We conclude that Respondent's actions had no substantial purpose other than to burden the school secretary and Mother in violation of Rule 4.4(a).

*Rule 8.4(d).* The Commission alleges that by failing to abide by the orders and procedures of the divorce court and the CHINS court, and instead substituting her own judgment for that of the courts and Child Protective Services, Respondent engaged in conduct that is prejudicial to the administration of justice in violation of Professional Conduct Rule 8.4(d).

Whether and to what extent the CHINS custody order had been adopted by the divorce court is a matter of debate. Even if no order specifically barred Respondent from taking the children to see Father, we conclude that Respondent violated Rule 8.4(d). As the hearing officer noted, Indiana has laws and procedures to deal with allegations of abuse, as well as agencies specifically designed to, charged with, and trained to deal with such allegations. Respondent, however, took matters into her own hands and acted precipitously in disregard for the laws and agencies designed to deal with allegations of child abuse. These actions were prejudicial to the administration of justice in violation of Professional Conduct Rule 8.4(d).

**Discipline:** An important factor in determining appropriate discipline is the risk to the public should we allow Respondent to continue in the practice of law. *See Matter of McCarthy,* 668 N.E.2d 256, 258 (Ind.1996). Respondent lacks any insight into why her conduct was wrong, maintaining that she did the right thing because she was serving a higher purpose of protecting the safety of the children. Convincing evidence was presented that this incident was not an isolated lapse. We therefore conclude that Respondent should be suspended without automatic reinstatement.

For Respondent's professional misconduct, the Court **suspends Respondent from the practice of law in this state for a period of not less than six months, without automatic reinstatement, beginning September 7, 2012.** Respondent shall not undertake any new legal matters between service of this order and the effective date of the suspension, and Respondent shall fulfill all the duties of a suspended attorney under Admission and Discipline Rule 23(26). At the conclusion of the minimum period of suspension, Respondent may petition this Court for reinstatement to the practice of law in this state, provided Respondent pays the costs of this proceeding, fulfills the duties of a suspended attorney, and satisfies the requirements for reinstatement of Admission and Discipline Rule 23(4). Reinstatement is discretionary and requires clear and convincing evidence of the attorney's remorse, rehabilitation, and fitness to practice law. *See* Admis. Disc. R. 23(4)(b).

The costs of this proceeding are assessed against Respondent. The hearing officer appointed in this case is discharged.

The Clerk is directed to forward a copy of this Order to the hearing officer, to the parties or their respective attorneys, and to all other entities entitled to notice under Admission and Discipline Rule 23(3)(d). The Clerk is further directed to post this order to the Court's website, and Thomson Reuters is directed to publish a copy of this order in the bound volumes of this Court's decisions.

All Justices concur.